IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| CITY OF RIVIERA BEACH POLICE PENSION FUND,<br><br>    *Plaintiff*,<br><br>v.<br><br>TARGET CORPORATION, *et al.*,<br><br>    *Defendants*. | No.: 2:25-cv-00085-JLB-KCD<br><br>CLASS ACTION |
| STATE BOARD OF ADMINISTRATION OF FLORIDA,<br><br>    *Plaintiff*,<br><br>v.<br><br>TARGET CORPORATION, *et al.*,<br><br>    *Defendants*. | No.: 2:25-cv-00135-JLB-KCD<br><br>CLASS ACTION |

**REPLY IN FURTHER SUPPORT OF STATE TEACHERS
RETIREMENT SYSTEM OF OHIO'S MOTION FOR
CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF, AND
APPROVAL OF SELECTION OF LEAD COUNSEL**

I.    **PRELIMINARY STATEMENT**

The Introduction to the response brief of SBA begins: "This case is about Target's decision to prioritize woke 'stakeholders' who demand increasingly aggressive Environment, Social, and Governance ('ESG') and Diversity, Equity, and Inclusion ('DEI') campaigns over investors who just want a positive return." ECF No. 47 at 1. SBA's description of what this case is about is completely wrong. And its misconception about the goals of this securities fraud class action should disqualify SBA from serving as lead plaintiff, and its counsel as lead counsel.

The PSLRA is blind to political ideologies. This securities fraud class action is about disclosure, and whether Target misled investors about material facts. The goal of the litigation is to recover money for Target's shareholders who purchased Target shares at inflated prices, not to put an end to Target's ESG/DEI practices. With this reorientation, SBA offers no basis to strip Ohio STRS of its presumptive lead plaintiff status under the PSLRA. Ohio STRS has the "largest financial interest" in the litigation, as that term is universally interpreted. SBA recognized that once it saw Ohio STRS's motion and so, *for the first time in its response*, offers a novel (and nonsensical) interpretation of "financial interest" that is universally rejected and is diametrically opposed to the interests of the class SBA seeks to represent.

As to choice of counsel, Grant & Eisenhofer P.A. ("G&E") has decades of experience litigating securities fraud cases on behalf of investors holding all political views. G&E understands what this case is about and how to litigate it. In contrast, SBA and its counsel have demonstrated their misunderstanding of the fundamental

1

premise of this case and their intent to use the PSLRA as a vehicle to advance political causes that are not espoused by all Target investors, rather than to recover funds for investors who purchased Target securities at artificially inflated prices.

## II. ARGUMENT

### A. OHIO STRS HAS THE LARGEST FINANCIAL INTEREST UNDER ANY PROPOSED CLASS PERIOD ACCORDING TO ELEVENTH CIRCUIT LAW

There can be no serious dispute that Ohio STRS has the "largest financial interest" under *all* the *Olsten-Lax* factors considered by courts in this circuit (*see* ECF No. 42 at 10-11), even using the class period chosen by SBA:

| Class Period | Movant | Total Shares | Net Shares | Net Funds | LIFO Loss |
|---|---|---|---|---|---|
| Aug. 26, 2022– Nov. 19, 2024 | Ohio STRS | 301,897 | 186,999 | $28,240,211 | $4,641,589 |
|  | SBA | 65,179 | 38,855 | $9,051,728 | $81,607 |
| Mar. 9, 2022– Aug. 16, 2023 | Ohio STRS | 181,308 | 49,700 | $6,568,480 | $3,450,463 |
|  | SBA | 23,491 | 732 | $3,650,495 | $291,236 |

Thus, there is no reason to address premature arguments about the class period.[1]

Recognizing the reality that Ohio STRS prevails on every *Olsten-Lax* factor, SBA argues that the method for determining which movant has the largest financial interest in the litigation "is an open question." *See* ECF No. 47 at 15. It is not. The factors considered in determining the largest financial interest are well-settled in the Eleventh Circuit. *See, e.g., MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*, 2019 WL 2648550, at *2 (M.D. Fla. June 12, 2019) (discussing the "*Olsten-Lax*"

---

[1] The parameters of the class period can be addressed at the class certification stage with each side having access to facts and experts. And by arguing against a longer class period, SBA is putting its own interests above those of the class it seeks to represent and providing fodder for defendants to challenge class certification at a later date.

2

factors). Ohio STRS has the largest financial interest when assessed utilizing any and all of the relevant factors. SBA ignores three out of four of the *Olsten-Lax* factors, and zeroes in only on LIFO loss. SBA concedes that "[t]he PSLRA requires that damages should include unrealized losses," but nonetheless argues that such losses should be disregarded in determining the largest financial interest at the lead plaintiff stage. *See* ECF No. 47 at 15. SBA takes this position for the first time in its response brief and SBA included unrealized losses in calculating its own LIFO loss in its opening brief. *See id.* at 15 n.31. SBA changed its position only after seeing Ohio STRS's competing calculations. Courts have "uniformly disapproved of such gamesmanship in PSLRA lead plaintiff motions." *See Peters v. Twist Bioscience Corp.*, 2023 WL 4849431, at *4 (N.D. Cal. July 28, 2023) (declining to adopt revised loss calculation methodologies advanced only in lead plaintiff movant's opposition).

The notion that "financial interest" in the outcome of any litigation has nothing to do with damages makes no economic sense. To support its nonsensical argument, which actually runs contrary to the interests of the very class SBA seeks to represent, SBA substitutes expert "theory"[2] for well-settled statutory and case law. SBA's novel attempt to redefine the concept of a movant's financial interest in a case is inconsistent with the uniform approach adopted by courts in this circuit. Courts in this circuit, and indeed in every circuit, routinely appoint lead plaintiffs based upon

---

[2] Rajeev R. Bhattacharya, Ph.D. failed to attach his CV to his Declaration (ECF No. 47-1) and no CV appears to be available online. It is unknown, therefore, whether Dr. Bhattacharya has ever espoused the novel theories he attests to here, or whether they have ever been accepted by a court.

calculations including unrealized losses. In those cases, the loss calculation adopts the PSLRA's formulation that applies a selling price to retained shares equal to the average price that the stock trades at during the 90 days following the end of the class period, *i.e.*, the "90-day lookback price." *See e.g., MAZ Partners*, 2019 WL 2648550, at *2 (calculating losses for retained shares using the 90-day lookback price); *Jastram v. Nextera Energy, Inc.*, 2023 WL 11885983, at *3 (S.D. Fla. Oct. 26, 2023) (same).

SBA cannot point to one Eleventh Circuit case rejecting Ohio STRS's loss calculation methodology at the lead plaintiff stage. In fact, even the out-of-circuit cases cited by SBA are inapposite and fail to support SBA's argument. SBA relies primarily on *In re Ribozyme Pharms., Inc. Sec. Litig.*, 192 F.R.D. 656, 661-62 (D. Colo 2000), which even courts in that district have labeled an "outlier." *See Mariconda v. Farmland Partners Inc.*, 2018 WL 6307868, at *3-4 (D. Colo. Dec. 3, 2018) (acknowledging "a clear weight of authority favoring the four-factor *[Olsten-] Lax* test" and deeming *Ribozyme* an "outlier"). SBA also cites *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 (S.D.N.Y. 2008), which considered what price to apply to retained shares where the shares were illiquid.

### B. SBA FAILED TO REBUT THE PRESUMPTION THAT OHIO STRS IS THE MOST ADEQUATE LEAD PLAINTIFF

SBA argues that a purported "reluctance to sue" rebuts the PSLRA's presumption and disqualifies Ohio STRS. *See* ECF No. 47 at 4-6. SBA's "***proof***," or

4

lack thereof, fails to support this contention.³ Ohio STRS's so-called initial "reluctance" to move for lead plaintiff does not suggest inadequacy, let alone offer "***proof***" of inadequacy, as required by 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Ohio STRS carefully considered whether to move for lead plaintiff, conduct which suggests that Ohio STRS–experienced in leading securities fraud actions–takes its lead plaintiff duties seriously. Indeed, after realizing that this case was about Target's public disclosures and recovering money for aggrieved investors, Ohio STRS ultimately decided to prioritize the interests of Target's investors, demonstrating a clear commitment to vigorously prosecute the case on behalf of the class as stated in the signed Certification filed with its motion. ECF No. 43-1. Courts credit prospective plaintiffs that deliberate before deciding to participate in litigation, recognizing that such deliberation does not undermine their capacity to zealously represent the class. *See Rodriguez v. It's Just Lunch, Intern.*, 300 F.R.D. 125, 145-46 (S.D.N.Y. 2014) (plaintiff that was initially "reluctant" to sue, but ultimately proceeded, has "an interest in vigorously pursuing the claims of the class.").⁴

    **C.**    **SBA IS ATYPICAL AND INADEQUATE UNDER RULE 23**

---

³ SBA's "proof" is a letter from Ohio's Attorney General, not a statement from Ohio STRS.

⁴ The authorities cited by SBA do not support its position and, in fact, bolster Ohio STRS's adequacy. *See London v. Wal-Mart Stores, Inc.*, 340 F. 3d 1246, 1253-54 (11th Cir. 2003) (finding that named plaintiffs are not inadequate unless "their participation is so minimal that they virtually have abdicated their attorneys to conduct the case."); *In re Ins. Mgmt. Sols. Grp., Inc. Sec. Litig.*, 206 F.R.D. 514 (M.D. Fla. 2002) (finding plaintiff was adequate by "demonstrating a willingness to participate."). The treatise cited by SBA is irrelevant. *See* 7A Wright & Miller, *Federal Practice & Procedure* § 1768 (4th ed., 2025 update) (discussing a class representative's "reluctance" in the context of a "request to *strike* class claims") (emphasis added).

SBA is atypical and inadequate because its decision to move for lead plaintiff was motivated by its and its counsel's political agenda, not to maximize recovery for the class. SBA's counsel filed *Craig* on behalf of only five plaintiffs, apparently seeking to recover for this very limited group, and to effectuate policy change, with no interest in representing the financial interests of a nationwide class of aggrieved investors. *See Craig v. Target Corp. et al.*, No. 2:23-cv-00599, Dkt. No. 52 (M.D. Fla. 2023). SBA's counsel had every right to pursue those individual claims in any way it and its clients deemed appropriate. But SBA and its counsel cannot seek to lead a class action and pursue goals other than maximizing shareholder value. SBA's own description of "what this case is about" raises serious questions about the motivations of SBA and its counsel and undermines their ability to fairly and adequately represent the class. G&E has no such underlying conflict.

Ohio STRS understands that this is a nationwide class action involving investors with an array of political opinions and beliefs. Ohio STRS also understands that the goal in this action is to secure compensation for aggrieved class members stemming from Target's violation of the federal securities laws.

### D. OHIO STRS'S CHOICE OF COUNSEL SHOULD NOT BE DISTURBED

Under the PSLRA, the lead plaintiff is given the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Goldenberg v. NeoGenomics, Inc.*, 2023 WL 6389101, at *6 (S.D.N.Y. Oct. 2, 2023). G&E has devoted more than a quarter

6

of a century to representing and protecting investors. Throughout its history, G&E has represented investors with a scope of political viewpoints—some find ESG important, others do not. In furtherance of its commitment to investor protection, G&E founded the ESG Institute to serve the needs of certain ESG-focused clients. The ESG Institute hosts symposia that platform competing ideologies in order to foster civil discourse on ESG-related topics. SBA's counsel Jonathan Berry spoke at one such event attended by G&E's clients, and G&E continues to be open to working with Mr. Berry and his team to lead this litigation to a successful conclusion. G&E's involvement in ESG-related initiatives does not undermine G&E's ability to effectively serve as lead counsel.[5]

For the foregoing reasons, Ohio STRS respectfully requests that this Court grant its motion to be appointed lead plaintiff and approve its choice of counsel.

Respectfully submitted,

Date: April 25, 2025

| | |
|---|---|
| **GRANT & EISENHOFER P.A.** | By: /s/ *Joshua E. Dubin* <br> **JOSH DUBIN, P.A.** |
| Jay W. Eisenhofer (*pro hac vice*) | Joshua E. Dubin |
| Caitlin M. Moyna (*pro hac vice*) | 201 South Biscayne Blvd., Ste. 1210 |
| 485 Lexington Avenue | Miami, Florida 33131 |
| New York, NY 10017 | Telephone: (212) 219-1469 |
| Telephone: (646) 722-8500 | josh@jdubinlaw.com |
| jeisenhofer@gelaw.com | |
| cmoyna@gelaw.com | |

*Counsel for Ohio STRS*

---

[5] SBA cites an Amicus Brief filed which the ESG Institute submitted in *Nestlé USA, Inc. v. John Doe I*, No. 19-416 (U.S.), which sought to have the Alien Tort Statute apply to American companies that use foreign slave labor in their supply chains.

7

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

By: */s/ Joshua E. Dubin*
Joshua E. Dubin