# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| BRIAN CRAIG, et al.,<br><br>      *Plaintiffs*,<br>v.<br><br>TARGET CORPORATION, et al.,<br><br>      *Defendants*. | Case No. 2:23-cv-00599-JLB-KCD<br>Judge John L. Badalamenti<br>Magistrate Judge Kyle C. Dudek |
| CITY OF RIVIERA BEACH POLICE PENSION FUND, individually and on behalf all others similarly situated,<br><br>      *Plaintiff*,<br>v.<br><br>TARGET CORPORATION, et al.,<br><br>      *Defendants*. | Case No. 2:25-cv-00085-JLB-KCD<br>Judge John L. Badalamenti<br>Magistrate Judge Kyle C. Dudek |
| STATE BOARD OF ADMINISTRATION OF FLORIDA, individually and on behalf all others similarly situated,<br><br>      *Plaintiff*,<br>v.<br><br>TARGET CORPORATION, et al.,<br><br>      *Defendants*. | Case No. 2:25-cv-00135-JLB-KCD<br>Judge John L. Badalamenti<br>Magistrate Judge Kyle C. Dudek |

**DEFENDANTS' NOTICE REGARDING**
**CONSOLIDATION OF RELATED ACTIONS**

Defendants in all six of the below-captioned actions write, in accordance with the Court's June 4, 2025 order (Dkt. 124), to notify the Court of their position on consolidation. The six actions devolve into two groups:

- **Group 1: Three Direct Securities Actions Brought Against Target**. On the one hand, there are three related securities actions brought directly by investors *against* Target Corporation ("Target" or the "Company") and others: *Craig v. Target*, 2:23-cv-00599; *City of Riviera v. Target*, 2:25-cv-00085; *State Bd. of Admin. of Fla. v. Target*, 2:25-cv-00135 (collectively, the "Securities Actions"). These are actions in which the investor plaintiffs must prove that Target is liable for certain alleged misstatements *through* the conduct of certain individual defendants. *See infra*, 4-5.

- **Group 2: Three Derivative Actions Brought on Behalf of Target**. On the other hand, there are three related derivative actions brought purportedly *on behalf of* Target: *McCollum v. Target*, 2:25-cv-00021-JLB-KCD; *Kaur v. Cornell*, 2:25-cv-00043-JLB-KCD; *Murphy v. Cornell*, 2:25-cv-00062-JLB-KCD (collectively, the "Derivative Actions"). These are actions with different claims, threshold procedural requirements, substantive law, and plaintiffs, that require Target—which is the real plaintiff—to prove that the individual defendants are liable for misconduct. *See infra*, 3-5.

Defendants support consolidation of the three Securities Actions with each other, and they, likewise, support consolidation of the three Derivative Actions with each other. But Defendants oppose the consolidation of the Securities Actions together with the Derivative Actions. Each group asserts conflicting and materially different claims, such that consolidation would cause severe prejudice and confusion.

Under Federal Rule of Civil Procedure 42, courts may consolidate related actions that involve common questions of law or fact. Fed. R. Civ. P. 42. Local Rule 1.07(b) similarly permits consolidation where it would promote efficiency and consistency. *See* M.D. Fla. Local Rule 1.07(b). It is well established, however, that courts should refrain from consolidating cases where it would cause the "potential for

confusion of . . . legal issues" and "risk of prejudice." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 727 F. App'x 562, 570 (11th Cir. 2018) (citing *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)); *see also Kendall Healthcare Grp. v. 1199SEIU, United Healthcare Workers*, 2025 WL 1085129, at *1 (M.D. Fla. Mar. 5, 2025) (declining to consolidate under Local Rule 1.07 where doing so "risks creating a confusing docket"); *Markel Am. Ins. Co. v. Oliver*, 2021 WL 6125574, at *2 (M.D. Fla. July 21, 2021) (declining to consolidate under Local Rule 1.07 where doing so "would prejudice [a party]"). Consolidation of the Securities Actions with the Derivative Actions poses both concerns.

*First*, as the Derivative Action plaintiffs acknowledge, *McCollum* Dkt. 44 at 2-3, the Securities Actions and Derivative Actions present distinct legal issues and are subject to different "procedural and substantive requirements," *Sanders v. VeriFone Sys.*, 2013 WL 5550435, at *2 (N.D. Cal. Oct. 7, 2013), such that consolidation would be inappropriate. *See Galbraith ex rel. Force Prot., Inc. v. Kavanaugh*, 2009 WL 10678832, at *3-4 (D.S.C. Mar. 31, 2009) ("The vast majority of courts that have addressed the issue of whether a shareholder derivative action can be consolidated into a single action with a securities fraud class action involving the same company and the same set of operative facts have held that such consolidation is improper."); *Twin City Fire Ins. Co. v. United States*, 2015 WL 13792477, at *2 (M.D. Fla. Aug. 21, 2015) (rejecting consolidation where legal issues presented were "distinct" and could cause confusion).

Given these differences, consolidation would increase inefficiency and inconsistency, which is contrary to Rule 42 of the Federal Rules and Local Rule 1.07(b).

For starters, plaintiffs asserting derivative claims on behalf of a company "face factual and legal issues sufficiently independent and distinct from those in" a related securities action. *In re Bear Stearns Cos., Inc. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2009 WL 50132, at *5 (S.D.N.Y. Jan. 5, 2009). For example, derivative claims premised on the internal affairs of a corporation are governed by the law of the relevant company's state of incorporation; here, that is Minnesota. *Mukamal v. Bakes*, 378 F. App'x 890, 897 (11th Cir. 2010). Indeed, plaintiffs in these Derivative Actions assert a bevy of Minnesota state law claims that do not appear in the Securities Actions, including claims for breaches of fiduciary duties, waste, aiding and abetting, and unjust enrichment. *See, e.g.*, *McCollum* Compl. ¶¶224-47.[1]

The Derivative Actions also require that the Court determine whether the shareholder plaintiffs (who seek to stand in the shoes of the corporation) were excused from making a demand on the Board before filing suit. Because derivative suits purport to "enforce a ***corporate*** cause of action," the board is entitled to determine if bringing such an action is in the company's best interests. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95-96 (1991). A "precondition for the [derivative] suit" is that "the shareholder demonstrate that the corporation itself had refused to proceed after

---

[1] The Derivative Actions also assert claims under the federal securities laws. *See, e.g.*, *McCollum* Compl. ¶¶200-22. Unlike the Securities Actions, however, these claims are brought derivatively on behalf of the Company against the individual defendants.

3

suitable demand, unless excused by extraordinary conditions." *Id.* at 95-96 (cleaned up). Thus, Rule 23.1 of the Federal Rules of Civil Procedure requires shareholders to plead "any effort" to make a demand, or "reasons for . . . not making the effort" with particularity so that courts can assess whether this requirement has been met. Fed. R. Civ. P. 23.1(b). The Eleventh Circuit looks to the law of the state of incorporation—here Minnesota—to determine if the demand requirement is satisfied. *Whitten v. Clarke*, 41 F.4th 1340, 1348 (11th Cir. 2022); *see McCollum* Compl. ¶25. The requirements are exacting under Minnesota law, as the Minnesota Supreme Court has held that "the corporation should have the prerogative of weighing the benefits and detriments of bringing a lawsuit." *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 754 N.W.2d 544, 557 (Minn. 2008). By contrast, the Securities Actions all assert direct claims on behalf of investors (rather than derivative claims on behalf of Target)[2] and so do not require the Court to assess the adequacy of any pre-suit demand at all.

**Second**, as the Derivative Action plaintiffs also acknowledge, *McCollum* Dkt. 44 at 3-4, consolidating the Securities Actions and Derivative Actions into one action would "unfair[ly] prejudice" Target.[3] *See Rochester Laborers Pension Fund v. Monsanto*, 2010 WL 3842549, at *1 (E.D. Mo. Sept. 28, 2010); *see also Blitz Telecom*, 727 Fed.

---

[2] *See Craig* Am. Compl. ¶¶521-534 (asserting direct securities claims against Target and the individual defendants); *City of Riviera* Compl. ¶¶176-204 (same); *FSBA* Compl. ¶¶ 525-547 (same).

[3] The individual defendants will also face prejudice. It is "not practical for two actors—[the derivative plaintiff] and [the Company's] board—to pursue divergent strategies in two simultaneous actions on behalf of the same entity." *Brenner v. Albrecht*, 2012 WL 252286, at *5-6 (Del. Ch. Jan. 27, 2012); *accord Breault v. Folino*, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002).

4

App'x at 571 (denying consolidation where "prejudice would more likely result from consolidation than be avoided"); *Markel*, 2021 WL 6125574, at *2 (similar).

As set forth above, the "nature" of direct securities actions and derivative actions "differs substantially." *Sanders*, 2013 WL 5550435, at *2. Investor plaintiffs in direct securities actions typically claim that the company made intentionally false statements to investors through individual defendants. *See, e.g.*, *Craig* Am. Compl. ¶409 ("Defendant Target knew by and through Defendant Cornell . . . ."); *Riviera* Compl. ¶117 (same); *FSBA* Compl. ¶414 (same). That's because "[i]n a securities fraud suit based on alleged misrepresentations, [courts] start by looking to the state of mind of the individual corporate official or officials who make or issue the statement." *In re Tupperware Brands Corp. Sec. Litig.*, 2023 WL 5091802, at *4-5 (11th Cir. Aug. 8, 2023). By contrast, plaintiffs in derivative actions sue *on behalf of the corporation* and claim that the individual defendants (the company's fiduciaries) deceived and otherwise harmed the company with respect to the same subject matter. *See Deal v. Tugalo Gas Co., Inc.*, 991 F.3d 1313, 1319 (11th Cir. 2021). Derivative actions require the company, as plaintiff, to *prosecute* the individual defendants for their statements, thereby "*undermin[ing]* [the company's] defense of the securities class action." *In re Wynn Resorts, Ltd. Derivative Litig.*, 2019 WL 1429526, at *2 (D. Nev. Mar. 29, 2019) (emphasis added) (collecting cases).

Here, consolidating the Derivative Actions with the Securities Actions would put Target in the impossible position of seeking to prove its own liability, while

5

simultaneously defending itself against the same liability. The debilitating "conflicts between those claims asserted on behalf of [the company] in the Derivative Action and those asserted against [the company] in the Securities Actions" prejudice Target and "counsel against consolidation." *See Bear Stearns*, 2009 WL 50132, at *5; *see also Monsanto*, 2010 WL 3842549, at *1 (declining to consolidate securities and derivative actions as doing so would "prejudice" parties and "lead to confusion and inefficiency"); *Gilliam v. Fidelity Mgmt. & Res. Co.*, 2005 WL 1288105, at *4 (D. Mass. May 3, 2005) (similar); *see also In re Hawaiian Electric Indus., Inc. Stockholder Derivative Litig.*, 2024 WL 3594783, at *6 (D. Haw. July 30, 2024) ("[A]s long as a corporation is legitimately defending itself, it cannot be in the corporation's interest to have its shareholders endeavoring to undermine its defenses. There is an inherent tension in those postures.").

Recognizing these fundamental incompatibilities, courts across the country routinely stay derivative actions pending the resolution of related securities actions to avoid severe prejudice to the company. *See, e.g.*, *Sellers ex rel. 21st Century Holding Co. v. Lawson*, 2009 WL 10698793, at *2-3 (S.D. Fla. Mar. 30, 2009); *Yu v. Frost*, 2019 WL 5225059, at *1 (S.D. Fla. Aug. 1, 2019); Order Staying Proceedings, *In re Constellation Brands, Inc. S'holder Derivative Litig.*, No. 1:25-cv-00254-EAW (W.D.N.Y. May 27, 2025) (Dkt. 12); *In re CrowdStrike Holding, Inc. Derivative Litig.*, 2024 WL 5468511, at *2 (W.D. Tex. Dec. 2, 2024); *OConnor v. Huber*, 2022 WL 17585247, at *3 (S.D. Ohio Dec. 12, 2022); *In re Rh S'holder Derivative Litig.*, 2019 WL 580668, at *5 (N.D. Cal.

Jan. 23, 2019); *McDonald ex rel. RPM Int'l, Inc. v. Abizaid*, 2018 WL 692006, at *2 (N.D. Ohio Feb. 2, 2018); *Wynn Resorts*, 2019 WL 1429526, at *2, 4; *In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *5-6, 9 (C.D. Cal. Jan. 11, 2012); *In re Ormat Techs., Inc.*, 2011 WL 3841089, at *4-5, 9 (D. Nev. Aug. 29, 2011); *Breault v. Folino*, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002); *Rosenblum ex rel. Amgen, Inc. v. Sharer*, 2008 WL 9396534, at *8 (C.D. Cal. July 28, 2008); *In re First Solar Derivative Litig.*, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012); *Brudno v. Wise*, 2003 WL 1874750, at *5 (Del. Ch. Apr. 1, 2003).[4]

Accordingly, the risk of prejudice and confusion, as well as the "independent and distinct" legal issues, militate against consolidating the groups of Securities Actions and Derivative Actions together. *Bear Stearns*, 2009 WL 50132, at *5; *see also Monsanto*, 2010 WL 3842549, at *1; *Galbraith*, 2009 WL 10678832, at *3-4; *Gilliam*, 2005 WL 1288105, at *4. That's why the norm is to consolidate securities actions and derivative actions separately. *See, e.g.*, *Bear Stearns*, 2009 WL 50132, at *5; *Bristol Cnty. Ret. Sys. v. QuidelOrtho Corp.*, 2024 WL 5118417, at *4 (S.D.N.Y. Dec. 16, 2024) (noting the "common approach" is for securities and derivative actions to proceed separately); *In re Synchrony Fin. Sec. Litig.*, 450 F. Supp. 3d 127, 145 (D. Conn. 2020)

---

[4] Indeed, a stay of the Derivative Actions pending the resolution of the Securities Actions is particularly appropriate here because the Derivative Action plaintiffs seek to hold the individual defendants liable for damages and costs resulting from the Securities Actions. *See, e.g.*, *McCollum* Compl. ¶¶14-15, 176-77; *Murphy* Compl. ¶¶101-102. The merits of that claim cannot be determined prior to the resolution of the Securities Actions. After the Securities Actions are resolved, the Derivative Action plaintiffs can evaluate whether they remain interested in attempting to pursue their claims, despite the hurdles set forth above. *See supra*, 3-4.

7

(court severed previously consolidated securities and derivative actions to separately consolidate derivative actions together); *In re Frontier Comm's Corp. Derivative Litig.*, 2018 WL 3553332, *3-4 (D. Conn. July 23, 2018) (consolidating and staying derivative actions pending resolution of motion to dismiss related consolidated securities actions); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (separately consolidating securities actions, derivative actions, and ERISA actions); *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *1 (N.D. Cal. Mar. 4, 2013) (same); *Green Meadows Partners LLP v. Tomkinson*, 2006 WL 6885989, at *1, 3-4 (C.D. Cal. June 6, 2006) (severing previously consolidated securities and derivative actions and consolidating each separately).[5]

Thus, the Court should consolidate the Securities Actions with each other and the Derivative Actions with each other, but decline to globally consolidate all six actions together.

---

[5] The *Craig* and *State Board of Administration* plaintiffs' case, *Yeroushalami v. DHB Indus., Inc.*, reaches the same conclusion. *See Craig* Dkt. 129 at 2 (citing *Yeroushalami*, 2006 WL 8423950, at *3 (E.D.N.Y. Jan. 9, 2006) ("I do not recommend, however, that the derivative action be consolidated with the [securities] class action."), *R. & R. adopted*, 2006 WL 8423951 (E.D.N.Y. Jan. 31, 2006)); *City of Riviera* Dkt. 67 at 2 (same).

Dated: June 13, 2025

Respectfully submitted,

/s/ Sandra C. Goldstein

Traci T. McKee
**FAEGRE DRINKER BIDDLE & REATH LLP**
   *Lead Counsel for Defendants in State Board of Administration of Florida*
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Telephone: (239) 286-6910
traci.mckee@faegredrinker.com

Jeffrey P. Justman (*pro hac vice*)
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
jeff.justman@faegredrinker.com

Sandra Grannum (*pro hac vice*)
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7000
sandra.grannum@faegredrinker.com

*Counsel for Defendants*

Sandra C. Goldstein, P.C. (*pro hac vice*)
   *Lead Counsel for Defendants in Craig and City of Riviera*
Alexander J. Rodney (*pro hac vice*)
Jacob M. Rae (*pro hac vice*)
Ashley P. Grolig (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
sandra.goldstein@kirkland.com
alexander.rodney@kirkland.com
jacob.rae@kirkland.com
ashley.grolig@kirkland.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Sandra C. Goldstein
Sandra C. Goldstein, P.C. (*pro hac vice*)
  *Lead Counsel for Defendants in Craig and*
  *City of Riviera*
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 1022
Tel: 212-446-4800
Fax: 212-446-4900
sandra.goldstein@kirkland.com

*Counsel for Defendants*